## ATLAS INVESTMENT CO. v. TAX COLLECTOR.

Circuit Court, Monroe County.
December 16, 1949.

Vincent C. Giblin and Dixon, DeJarnette & Bradford, all of Miami, for plaintiff.

Paul F. Sawyer and J. Lancelot Lester, both of Key West, for defendant.

CHARLES A. CARROLL, Circuit Judge.

This cause came on for final hearing before me on the pleadings and the testimony taken before the Honorable Aquilino Lopez, one of the judges of this circuit. After testimony had been taken before that judge, the cause was submitted to me with the knowledge and consent of Judge Lopez and of the attorneys for the parties, for reasons of their own with which I am not concerned inasmuch as all the parties were willing and requested that I hear and determine the cause. While I did not hear the testimony, I have examined the file and read the evidence and examined exhibits, and the attorneys for the parties appeared and argued the cause before me on December 9, 1949.

The plaintiff corporation filed this suit in Monroe County on April 15, 1948 to enjoin collection of state and county taxes on certain property in that county for the year 1947. Plaintiff seeks a decree determining that the assessments on such property for that year were "excessive, unequal, unjust, unreasonable, arbitrary, discriminatory and illegal," and requiring the tax collector to receive and accept a certain sum alleged to be proper and correct. A temporary injunction has been entered deferring collection *pendente lite*. The property involved is well known in Key West—the Casa Marina Hotel with its appurtenances and personal property, and certain nearby vacant lots.

As to the 1947 assessments the plaintiff says in its bill that the assessor placed on the following properties the following values—on the hotel, $363,000, on the personal property, $25,000, on the vacant lots, $35,500, making a total of $423,500.

It contends that as of January 1, 1947 the following values were proper and correct—on the hotel, $170,000, on the personal property, $15,000, on the vacant lots $22,600, making a total of $207,600. Plaintiff alleged that on these values the tax would be $3,868.35, which amount has been tendered and deposited in the registry of the court.

The collector in his answer denies the material allegations of the bill, and counterclaims for an accounting to be taken to determine the amounts due for taxes for the year in question on the existing assessments, and for a foreclosure sale of the properties for collection of same.

Whereupon it is found, ordered, adjudged and decreed as follows:

The equities of the cause are with the defendant tax collector on the issues raised by the bill and answer, and the equities are likewise with the defendant on the issues raised by his counterclaim for collection of the taxes based on the original assessments.

The plaintiff has not, by a preponderance of the evidence, established that in the assessments of the properties in question as of January 1, 1947 the tax assessor acted arbitrarily, capriciously or discriminatorily, or in any respect fraudulently. The assessments for that year were not out of line with assessments on the same properties for prior years.

The property was under lease to the Navy for several years during the war and the long-time owner, the Florida East Coast Hotel Co., sold the hotel premises with the personal property after the Navy returned it. The date of that conveyance was December 1, 1946. If the hotel property was damaged or depreciated unduly during the Navy's occupancy, the amount which the Navy paid to the owner as compensation has not been disclosed. The sale of the hotel and personal property by East Coast just prior to 1947 for $225,000 is some indication of that, but is not conclusive.

That purchaser, unable to secure certain contemplated financing, got out of the picture for a $5,000 profit and the place was taken over from him by the plaintiff corporation, which went further later with certain improvements, operating the hotel during the 1946-47 and 1947-48 seasons—until it in turn sold the property in the spring of 1948 for $285,000.

There is conflict in the testimony as to whether any substantial portion of the improvements which were made occurred prior to January 1, 1947, or after that date. It appears that some improvements were undertaken prior to the January 1 date, although more were added later by the operators. The actual guest operation in that first season did not begin until some time in January.

The plaintiff relies mainly on the evidence of those sales as denoting and determining proper value together with testimony that to bring the hotel up to a project justifying any higher valuation would have required an expenditure of approximately $250,000 on it. The added expense would be due not so much to lack of repair or the condition of the premises as to the need for modernization and improvements which would make possible the more efficient and less costly operation of these ancient hotel premises.

The additional lots in question were acquired as an incident of and for intended use in connection with the hotel premises.

Referring again to the sales of the property on which the plaintiff relies there was, of couse, the first one, in December of 1946—its disposition by the Florida East Coast Hotel Co. at a price of $225,000. The transfer from that first purchaser to the plaintiff is not considered as a sale but more as a manner of assigning the deal to another party who was able to do something with it. The greater reliance appears to be placed by plaintiff on the subsequent sale it made in 1948 to a third party for $285,000.

Plaintiff has not offered testimony of experts as to value, but on the other hand defendant produced certain experts, that is, experienced appraisers, who expressed the opinion that the property was worth certain figures which were higher than the value which the assessor placed on it.

I am not influenced to any material extent by the sale of the property in 1948 for $285,000 for the very apparent reason that the assessor determined his value during 1947—almost a year before the 1948 sale of the property. So while the 1948 sale at $285,000 can be urged as showing that the property was not worth the amount of the assessment in 1947, the sale in 1948 was not something of which the assessor could have had any knowledge when he made the assessment in 1947, and I cannot see how the fact of such later sale could be any indica-

tion of arbitrariness or fraudulent action on the part of the assessor.

Another feature relating to the 1948 sale at $285,000 was that the plaintiff itself, for a considerable period prior to that sale, placed a substantially higher value on the property. There was some testimony that plaintiff had listed the property as high as $600,000, but that fact was not established. Testimony on plaintiff's behalf, however, indicated that the property had been listed and offered by it at sums ranging up to and over $400,000.

While it is true that no takers were found at those figures and the ultimate sale was made at the lesser figure, the smaller sum was accepted only after prolonged and persistent efforts by plaintiff to sell at the higher figures, which it must be presumed was a value plaintiff assigned the property at the time. Moreover, although the plaintiff corporation had plenty of money and was not compelled to sell, it was anxious to sell and determined to dispose of the property and did not care to retain it for further operation. Plaintiff's reasons for that were definitely expressed in the evidence and need not be detailed here.

It appears to me that the 1948 sale by plaintiff reflects a situation where, having determined to unload the place, the plaintiff sold to the only purchaser it could find in a reasonable time at a price it could get. In a place the size and character of Key West, this hotel property is a project of great size and importance, with certain obstacles to successful operation. Persons (or prospective purchasers) who would feel able and competent to undertake the project could normally be expected to be few and far between. The 1948 sale price can as well reflect absence of a purchaser available at that period to take it on at its essential value—as that the price obtained pegs the value.

Value of property of that character is difficult to determine with any exactness. The assessor is entitled to an opinion, and to leeway for such opinion, and under all of the circumstances of this case, it is the view of this court that the assessment was honestly arrived at and that the assessor was not guilty of any arbitrary or discriminatory practice in respect to the same.

It is further ordered and decreed that the defendant tax collector is entitled to receive the portion of the taxes which was

172

tendered into court and which is on deposit in the registry of the court, to be applied on the amount of taxes on the properties in question for the year 1947. In addition the collector is entitled to receive the balance of such taxes due under the 1947 assessment and levy, together with proper interest and other amounts, if any, which may be added to the same under the law. As that amount is not established with any definiteness in this record, the court retains jurisdiction of the cause to determine the total amount due, on hearing after notice to the parties, and for the purpose of directing that the said determined amount or balance of taxes shall be paid, together with the costs of this suit, and if not paid, then to decree foreclosure in order to satisfy the same, as prayed for in the counterclaim.